IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Oasis Petroleum North America, LLC | ) | Civil No. 4:14-CV-077 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT DRAKIN OILFIELD** |
| | ) | **CONSTRUCTION SERVICES, INC.'S** |
| Drakin Oilfield Construction, Inc.; B&G | ) | **REPLY MEMORANDUM OF LAW IN** |
| Roustabout Service, LLC; Ace American | ) | **SUPPORT OF DRAKIN'S CROSS-** |
| Insurance Company; Ace Property and | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Casualty Insurance Company; Bituminous | ) | |
| Casualty Corporation; Bituminous Fire & | ) | |
| Marine Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*          \*\*\*          \*\*\*

## INTRODUCTION

Defendant and Cross-Claim Plaintiff Drakin Oil Field Construction, Inc. ("Drakin") submits this reply memorandum of law in support of *Defendant Drakin Oilfield Construction Services, Inc.'s Cross-Motion for Summary Judgment*, ("Drakin Motion") (doc. 80.) Drakin requests Ace defendants' motion for summary judgment be denied, and the Drakin Motion be granted.

## ARGUMENT

I.    **Ace Waived The Notice Requirement Pursuant to N.D.C.C. § 26.1-32-09 by Failing To Provide Drakin With Prompt Objection To The Delayed Notice**

Confusing the elements of estoppel with the statutory provisions of N.D.C.C. § 26.1-32-09, Ace incorrectly argues application of the statute requires a finding of detrimental reliance by the insured. The single North Dakota case cited by Ace involved application of estoppel, not § 26.1-32-09. *See Center Mutual Ins. Co. v. Thompson*, 2000 ND 192, ¶ 10 618 N.W.2d 505 (rejecting claim of estoppel by insured on basis elements of estoppel not met).

North Dakota Century Code Section 26.1-32-09 provides as follows:

Delay in the presentation to an insurer of notice or proof of loss is waived if the delay is caused by any act of the insurer, or if the insurer fails to make a prompt and specific objection.

The statute makes no reference to detrimental reliance, and such is not a prerequisite to the statute's application.

In essence, Ace is arguing Drakin must show detrimental reliance upon Ace's delay in denying coverage (i.e. actual prejudice) before the statutory waiver provision applies, while at the same time arguing actual prejudice to Ace as a result of any delayed notice by Drakin is not required. Ace's arguments are wrong on both counts.

The California case cited by Ace, *Oakland-Alameda County Coliseum, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 480 F.Supp.2d 1182 (N.D. Cal. 2007) ("*Oakland-Alameda*") is also distinguishable. *Oakland-Alameda* did not involve the interpretation or application of N.D.C.C. § 26.1-32-09. Although California has a statute similar to section 26.1-32-09, the federal court in *Oakland-Alameda* simply misapplied the state statute by intermingling the common law requirements for waiver with the unambiguous statutory provision. The Ninth Circuit Court of Appeals interpretation and application of the same California statute in *National Am. Ins. Co. of California v. Certain Underwriters at Lloyd's of London*, 93 F.3d 529 (9th Cir. 1996) ("National American") demonstrates this point.

The California statute provides: "[d]elay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground." Cal. Ins. Code § 554. As with the North Dakota statute, the California statute makes no reference to any requirement of detrimental reliance by the insured upon the insurer's failure to make a prompt and specific objection to the delay in presentation of notice or proof of loss.

The Ninth Circuit Court of Appeals specifically interpreted and applied the California statute in *National American*. In that case, roughly two years after insurance underwriters were provided a late notice of claim by a reinsured, the underwriters asserted, for the first time, the late provision of notice of claim as a defense to coverage. In analyzing the underwriter's defense, the appellate court noted "[u]nder California law, a reinsurer may invoke the defense of late notice so long as it immediately objects to the late notice, and suffers 'actual and substantial prejudice.' *Insurance Co. of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir. 1990). Cal. Ins. Code § 554 provides that '[d]elay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically on that ground.'" *Id.* at 538. The appellate court agreed with the district court that pursuant to Cal. Ins. Code § 554 the underwriters waived the defense of untimely notice of claim by failing to promptly assert such defense. Notably, and most relevant to the present case, the Ninth Circuit Court of Appeal in *National American* did not reference nor engage in any analysis into whether such delay in objection on the part of the underwriters was relied upon by the reinsured to its detriment.

Considering Cal. Ins. Code § 554 is statutory, the federal district court in *Oakland-Alameda* simply erred by applying the elements of a common law defense of waiver in the context of the statutory mandate of § 554. The Ninth Circuit Court of Appeals properly interpreted and applied § 554 in *National American*. Whether an insured detrimentally relies upon an insurer's failure to object to a late notice of claim is simply irrelevant in the context of a statutory requirement. *See Beasley v. Pacific Indem. Co.*, 200 Cal.App.2d 207, 209 (1962)(citing Cal. Ins. Code § 554 for proposition an insurer's right to rely upon a time limitation in a policy may be waived, and noting "[c]onsistently with their abhorrence of forfeitures, the courts look

favorably upon claims of such waiver": not considering whether insured relied upon insurer's late objection to insured's detriment); *Lagomarsino v. San Jose Abstract and Title Ins. Co.*, 178 Cal.App.2d 455, 459-60 (1960)(citing Cal. Ins. Code § 554 in rejecting insurer's defense of insured's failure to provide notice of loss within 60 days of ascertainment of damage or loss, noting insurance policy terms could not trump statutory requirements: not considering whether insured relied upon insurer's late objection to insured's detriment.)

In the present case, no provision in the Ace policies could possibly trump the statutory requirements of N.D.C.C. § 26.1-32-09. In addition, the elements of a common law defense of waiver simply have no application to statutory requirements. Therefore, the relevant inquiry is whether Ace's denial of coverage of the basis of Drakin's alleged late provision of notice was "prompt". For the reasons discussed in Drakin's principal brief, and in the context of the type of claim involved (saltwater spill) and surrounding circumstances, Ace's denial of coverage roughly two months after being provided notice of the spill was not "prompt," and was therefore waived.

## II.    The Pollution Exclusion Does Not Apply

Whether spilled saltwater constitute a "pollutant" under the Ace policies must be determined from the definition of the term "pollutant" under such policies. As discussed in Drakin's principal brief, although Ace cites several cases in which court's have determined spilled saltwater constitutes a pollutant, those cases do not provide any detailed analysis into whether saltwater specifically falls within any of the categories of substances within the policy definition of "pollutant." Any ambiguity in this regard must be decided in favor of the insured.

## III.    The Endorsement Notice Requirement Is Not Conspicuous, and Should Therefore Not Be Enforced

Ace's assertion Drakin has not pointed out how the notice requirement could have been more conspicuous is incorrect. Drakin specifically argued as follows in its principal brief:

4

In this case, the 60 day notice requirement in the Endorsement is not conspicuous. Neither the caption of the Endorsement, nor any heading within the Endorsement, references a notice requirement, let alone an abbreviated notice period. The notice requirement appears on the third page of a seven page endorsement, and even then, it is the last of five listed requirements, and is the only requirement which appears on page 3 – the remaining four requirements appear separately on page 2. The notice requirement is not in caps, italicized, bolded, or emphasized in any way. It is obscurely placed and nothing draws attention to it within either the Policy or Endorsement.

Drakin also discussed the North Dakota statutory definition of the term "conspicuous" in the context of the Uniform Commercial Code, as well as case law, including the California case of *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 174 Cal.APP.4th 750 (2009) discussed prominently in Ace's brief, which discusses factors considered in relation to the conspicuousness of a notice requirement in an insurance policy. Although the court in *Venoco* ultimately determined the pollution buy-back provision in that case was sufficiently conspicuous to be enforceable, such provision was far more conspicuous than the notice requirement in the Endorsement in the present case. As discussed in detail in Drakin's principal brief, the pollution buy-back provision in *Venoco* contained the relevant time-reporting limit on a separate page of the policy, and "the pollution buy-back provision contains a bold-faced heading that is phrased as a time-limit clause: 'SEEPAGE AND POLLUTION BUY-BACK 7 DAY CLAUSE (LAND BASED OPERATIONS).'" *Id.* at 759. In *Venoco*, the shortened notice requirement was prominently featured in a bolded and all caps heading appearing on a separate page of the policy. Venoco's chief financial officer testified he knew pollution exclusions were common in the oil industry and conceded Venoco requested the insurer to add the provision at issue. *Id.*

Ace also essentially concedes the Endorsement's notice requirement is "unusual and unfair" by noting California's conspicuousness requirement only applies in the first instance to

language that is unusual or unfair, and conceding the *Veneco* court was addressing whether a similar pollution reporting requirement was sufficiently conspicuous.

Ace's assertion there is no conspicuousness requirement in North Dakota is also incorrect. In the context of an insurance coverage dispute, the North Dakota Supreme Court has considered whether a policy term relied upon by an insurer for denying coverage was sufficiently conspicuous.

> The invocation of the Doctrine of Reasonable Expectations may not always be appropriate but is when, as here, ambiguity is created by confusingly dissimilar exclusionary language buried in the bodies of two policies ostensibly providing comprehensive farm liability coverage. What the one hand bestows, the other imperceptibly takes away. This kind of legerdemain by draftsmanship, the lack of notice to the buyer of the policy exclusions, **the inconspicuous placement of the exclusionary clauses in the contracts**, the obscure relationship to each other, and the reasonable belief of the insured that he was securing general liability coverage for his normal farming operations all foster coverage expectations which must be fulfilled in this instance.

*Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 673 (N.D. 1977)(bold added).

As discussed in Drakin's principal brief, the Ace policy is an occurrence policy which generally provides comprehensive coverage for occurrences within the policy period. The notice requirement relied upon by Ace is contained in an exception to an exclusion and provides very short notice requirements which are at odds with the notice requirements of the general policy, thereby frustrating the reasonable expectations of Drakin of comprehensive coverage during the policy term.

In addition, as discussed in Drakin's principal brief, Ace has admitted[1] the following:

1.      other than AAIC's denial letter to Drakin dated March 27, 2014, no AAIC and/or APCIC employee ever had direct contact with Drakin or Oasis either orally or in writing, concerning the insurance policy issued to Drakin and/or the Saltwater Spill and that any

---

[1] Ace's motion (doc. 91) requesting permission to serve late responses to Drakin's requests for admissions is currently pending before the Court.

such contact would have been made by the insurance agent, American Insurance, Inc.; and

2.      Drakin was never notified by defendants AAIC and/or APCIC or its agents of the notice requirements in the Pollution Endorsement prior to the Saltwater Spill.

Ace's assertion Drakin specifically requested the notice requirement is also incorrect, and is based on the fallacy American Insurance was acting as agent for Drakin when, in fact, American Insurance was acting as agent for Ace.  Upon information and belief, the insurance documents relied upon by Ace, wherein the notice requirement is referenced, were completed by either Ace, or Ace's agent American Insurance.  As discussed in Drakin's principal brief, the Producer Agreement between Ace and American Insurance, wherein the relationship between Ace and American Insurance is allegedly established, was never provided to Drakin and it was always Drakin's understanding American Insurance was an agent of Ace.  Whether American Insurance was an agent of Ace is relevant to the notice prejudice inquiry.  Although notice would still have been provided more than 60 days after commencement of the discharge, every day counts in relation to the issue of whether Ace suffered any actual prejudice as a result of the delayed notice.

**IV.      The Notice Requirement Should Be Deemed Void as Against Public Policy**

Ace asserts Drakin mischaracterizes the Endorsement when Drakin asserts the following in Drakin's principal brief:

> The Endorsement does not provide prospective coverage as typically provided under an occurrence policy, as no coverage applies if the occurrence is not reported within 60 days. The Endorsement also does not provide retroactive coverage as typically provided under a claims made policy as only discharges occurring during the policy period potentially are covered. The Endorsement provides unrealistic and inadequate coverage and the notice requirement should be deemed void as against public policy.

7

Specifically, Ace asserts "This description is flatly wrong. Even under the Pollution Endorsement's narrow exception, nothing requires that any 'claim' be 'first made' during the policy period. So long as the pollution incident is ascertained within 30 days and reported within 60 days, the conditions for a 'covered pollution incident' are met, **regardless of when any claim is made**." (Doc. 95 at 21 (bold in original).) Ace's argument mischaracterizes Drakin's position. Drakin has never asserted the Ace policy, or the Endorsement, requires claims be first made during the policy period. The above quoted language from Drakin's principal brief is in fact wholly accurate. The Endorsement does not provide prospective coverage as no coverage applies if the pollution incident is not reported within 60 days, and does not provide retroactive coverage as the Endorsement requires the discharge occur during the policy period (i.e. no coverage for discharges occurring prior to policy period). The primary point is the Ace policy and Endorsement fail to provide the basic advantages of either an "occurrence" policy or a "claims-made" policy, thereby frustrating the reasonable expectations of an average insured. Public policy favors the prevention of the perpetuation of policy terms which provide unrealistic and inadequate coverage. *Sparks v. St. Paul Insurance Company*, 495 A.2d 406, 414-15 (N.J. 1985)(finding legal malpractice policy which provided neither retroactive coverage generally available under a "claims made" policy, nor prospective coverage generally available under an "occurrence policy" included the worst features of both occurrence and claims made policies, and the best of neither, and was therefore against public policy as providing unrealistic and inadequate coverage).

## V.    A Genuine Issue of Material Fact Exists As To Whether Ace Suffered Actual Prejudice As a Result of Delayed Notice

As conceded by Ace, Ace bears the burden of proving that a policy exclusion applies. (Doc. 95 at 5.) Whether Drakin bears the burden of proving an exception to the exclusion is really a moot

point in this case as it is undisputed notice of the saltwater spill was provided to Ace more than 60 days after commencement of the discharge.  Regardless, Ace also bears the burden of proving actual prejudice as a result of the delayed notice.

As discussed in Drakin's principal brief, under North Dakota law, an insured's provision of late notice to an insurer will not preclude coverage under an insurance policy unless the insurer can prove prejudice as a result of the late notice sufficient to establish a material breach of the contract. The North Dakota Supreme Court in *Finstad v. Steiger Tractor, Inc.*, 301 N.W.2d 392 (1981) specifically noted there are a diversity of views as to the consequences of a failure to comply with notice provisions in insurance policies.  *See* Charles C. Marvel, LL.B., *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R. 4th 141 (orig. published 1984)(documenting diversity of views on and application of notice prejudice rule).  One view, the traditional view espoused by ACE, holds that prejudice to the insurer is immaterial and a failure to provide timely notice precludes coverage.  Another view, the modern view adopted by the North Dakota Supreme Court, holds that late notice alone is insufficient to deny coverage.  Instead, the insurer also bears the burden of proving actual prejudice as a result of the late notice sufficient to constitute a material breach of contract.  *Findstad* at 397.  Other jurisdictions apply a wide range of approaches to the notice prejudice rule.  In adopting the modern approach, the North Dakota Supreme Court provided the following quote as justification:

> And although the policy may speak of the notice provision in terms of "condition precedent," as Whitely observed, nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective.  Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach.  To do so would be unfair to insureds.

> The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's.

*Id.* at 398 (quoting *Cooper v. Government Employees Insurance Company*, 237 A.2d 870, 873-74 (N.J. 1968)). Ace is essentially requesting this Court to overturn *Finstad*.

Under the undisputed facts in this case, Ace could also never establish actual prejudice. Pursuant to the Endorsement's notice requirement, Drakin could have provided notice to Ace on the 60th day following commencement of the discharge. Had that occurred, the vast majority, if not all, of the discharge cleanup work would have been completed by such date. As noted in Drakin's principal brief, a genuine issue of material fact exists as to whether ACE has suffered any appreciable prejudice as a result of any delayed notice. Discovery is ongoing from Ace in relation to whether Ace has suffered any actual prejudice based on the timing of the notice of the saltwater spill.

## CONCLUSION

As discussed above, Drakin requests the ACE Motion be in all things denied, and Drakin's Cross-Motion for Summary Judgment be granted.

Dated this _5 th_ day of January, 2016.

SMITH BAKKE PORSBORG
SCHWEIGERT & ARMSTRONG

By: _____
Randall J. Bakke (#03898)
Shawn A. Grinolds (#05407)
122 East Broadway Avenue
P.O. Box 460
Bismarck, ND 58502-0460
(701) 258-0630
rbakke@smithbakke.com

10

sgrinolds@smithbakke.com

Attorneys for Defendant,
Drakin Oilfield Construction, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January _5_, 2016, a true and correct copy of the foregoing **DEFENDANT DRAKIN OILFIELD CONSTRUCTION SERVICES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF DRAKIN'S CROSS-MOTION FOR SUMMARY JUDGMENT** was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

ATTORNEY FOR PLAINTIFFS:

    Steven A. Storslee (#03346)
    Storslee Law Firm, PC
    1900 Burn Boat Drive, Suite 101
    Bismarck, ND 58503
    sstorslee@storsleelaw.com

ATTORNEY FOR DEFENDANT, BITUMINOUS CASUALTY CORPORATION AND BITUMINOUS FIRE & MARINE INSURANCE COMPANY:

    Troy A. Wolf (#05792)
    Fisher, Bren & Sheridan, LLP
    3137 32nd Avenue South, Suite 212
    Fargo, ND 58103
    twolf@fisherbren.com

ATTORNEY FOR DEFENDANT, B&G ROUSTABOUT SERVICE, LLC:

    Jason Vendsel (#04912)
    McGee, Hankla, Backes & Dobrovolny
    Wells Fargo Bk. Center
    15 2nd Ave. S, #305
    P.O. Box 998
    Minot, ND 58702-0998
    jvendsel@mcgeelaw.com

ATTORNEY FOR DEFENDANT, ACE AMERICAN INSURANCE COMPANY AND ACE PROPERTY AND CASUALTY INSURANCE COMPANY:

    Rebecca S. Thiem (#03693)
    Serkland Law Firm
    418 E. Rosser Ave., Ste. 303-B

11

P.O. Box 4066
Bismarck, ND 58502-4066
rthiem@serklandlaw.com

Thomas M. Jones
Jonathan Toren
Cozen O' Connor
999 Third Ave., Suite 1900
Seattle, WA 98104
tjones@cozen.com
jtoren@cozen.com

By:_____

RANDALL J. BAKKE